IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 0431 |
| | ) | |
| v. | ) | Judge William T. Hart |
| | ) | |
| THE LAW OFFICES OF EDWARD T. JOYCE, P.C., | ) ) | |
| | ) | |
| Defendant. | ) ) | |

## NOTICE OF FILING

TO:  Arthur W. Aufmann, Esq., Edward T. Joyce & Associates, Ltd., 11 South LaSalle Street, Suite 1600, Chicago, IL 60603

PLEASE TAKE NOTICE that on the 26th day of February, 2008, we filed with the Clerk of the U.S. District Court for the Northern District of Illinois, 219 S. Dearborn Street, Chicago, Illinois, the attached Reply Memorandum in Support of Motion for Expedited Ruling on Petition to Enforce Arbitration Subpoena, a copy of which is hereby served upon you.

Dated: February 26, 2008

Respectfully submitted,
**FEDERAL INSURANCE COMPANY**

By:  /s/ Anne L. Blume
One of its Attorneys

Janet R. Davis (ARDC No. 3127035)
Anne L. Blume (ARDC No. 6206581)
MECKLER BULGER & TILSON LLP
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone:  (312) 474-7900
Facsimile:  (312) 474-7898
Attorneys for Plaintiff

## CERTIFICATE OF ELECTRONIC SERVICE

I, Anne L. Blume, an attorney, hereby certify that on this, the 26th day of February, 2008, I served true and accurate copies of the Reply Memorandum in Support of Motion for Expedited Ruling on Petition to Enforce Arbitration Subpoena *via* electronic case filing using the Court's ECF system on:

Arthur W. Aufmann, Esq.
Edward T. Joyce & Associates, Ltd.
11 South LaSalle Street, Suite 1600
Chicago, IL 60603


　　　　　　　　　　　　　　　　　　　　/s/ Anne L. Blume

O:\6760\Federal v. ETJoyce\Notice of Filing.doc

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 1:08-cv-00431 ) ) Judge William T. Hart |
| EDWARD T. JOYCE FIRM, P.C. | ) ) |
| Defendant. | ) ) ) ) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR EXPEDITED RULING ON PETITION TO ENFORCE ARBITRATION SUBPOENA**

Federal Insurance Company ("Federal") states as follows as its reply memorandum in support of its request for expedited enforcement of an arbitration subpoena with which the Law Offices of Edward T. Joyce Firm, P.C. (the "Joyce Firm") has refused to comply:

## I. RELEVANT FACTS

### A. The Insurance Policies and Claims at Issue

Federal issued a policy of Directors, Officers and Corporate Liability insurance coverage to EPS Solutions Corporation and Enterprise Profit Solutions (collectively, "EPS") which provided a $15 million layer of insurance coverage in excess of the $10 million primary policy issued by National Union Fire Insurance Company of Pittsburgh, Pa. for the period of June 1, 2000 through June 1, 2001. These policies have been called upon to provide a defense and indemnity to EPS and many of its directors and officers, including Christopher Massey, Erik Watts and Jeffery Weinhuff, for various lawsuits and arbitration claims brought by EPS' shareholders arising out of their participation in a "roll-up" transaction pursuant to which they sold the assets of their companies to EPS in exchange for money and shares of EPS' stock.

On November 22, 2000, EPS filed a lawsuit against Deloitte & Touche ("D&T") and Jefferies & Company ("Jefferies") alleging that their key partners, Massey, Watts and Weinhuff, who were intimately involved in the promotion and establishment of EPS committed various frauds in their promotion and establishment of EPS (the "Affirmative Case"). Thereafter, EPS shareholders began to file suit against EPS and its directors and officers, including Massey, Watts and Weinhuff who became directors and officers of EPS, for securities fraud and related claims arising out of their participation in the "roll-up" transaction (the "Underlying Matters"). These are the matters submitted to National Union and Federal for coverage.

Among these Underlying Matters is the series of claims filed by the Joyce Firm on behalf of more than 100 claimants known as the "Shoecraft claims." The Shoecraft claimants named EPS as one of the defendants in their lawsuit but then entered into a tolling agreement with EPS. Following the Shoecraft claimants' unsuccessful proceedings against D&T and Jefferies, through the Joyce Firm, almost all of those claimants initiated arbitration against EPS in Lee v. EPS and obtained an award of more than $16 million for which they have now filed suit against EPS, Federal and EPS' other D&O insurers in the California Superior Court, San Francisco County.

**B.      The Coverage Arbitration**

Federal is presently engaged in an arbitration with EPS and its counsel, Bollinger Ruberry & Garvey ("BRG"), pending in the American Arbitration Association (the "Arbitration") in which Federal seeks a declaration regarding its rights and obligations under the policy of insurance that it issued to EPS.[1] At issue in the Arbitration is whether EPS breached the cooperation clause of the Federal policy and its duty of good faith and fair dealing in its

---

[1] On January 25, 2008, BRG was granted leave to intervene in the arbitration to recover its allegedly unpaid legal fees in the amount of approximately $2.2 million by virtue of an assignment of that claimed right from EPS which purportedly took place on September 1, 2007.

2

investigation and filing of the Affirmative Case in which it alleged that its directors and officers made fraudulent representations to roll-up participants who then filed suit against EPS based upon the same or materially similar allegations EPS made in the Affirmative Case. Another issue is whether the "insured versus insured" exclusion applies because the claimants in the Underlying Matters were shareholders whose claims were "instigated" by EPS' investigation and filing of the Affirmative Case and the Underlying Matters were "continued" with the assistance of EPS. That provision states as follows:

> the Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
>
> (i)  which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any insured; . . .

A third issue is that the majority of the fees and costs billed by EPS' attorneys were not "Defense Costs" as defined in the policy as "reasonable and necessary fees, costs and expenses consented to by the Insurer . . . *resulting solely from the investigation, adjustment, defense,* and appeal of a Claim against the Insured" but, rather, represented efforts and expenses to coordinate with claimants' counsel such as the Joyce Firm and counsel for the claimants in the other Underlying Matters for the prosecution of its claims against D&T and Jefferies in the Affirmative Case.

### C. The Subpoena Served on the Law Offices of Edward T. Joyce

The Arbitration Panel issued a subpoena *duces tecum* to the Joyce Firm which Federal served on or about December 21, 2007. A copy of the subpoena is attached as Exhibit A to Federal's motion for expedited production. On January 10, 2008, the Joyce Firm notified Federal that it would not comply with the subpoena. A copy of the letter is attached as Exhibit B to Federal's motion for expedited production.

Federal initiated this action for judicial enforcement of the subpoena. Since time is of the essence for Federal to obtain the documents which are the subject of the subpoena because the documents are essential to Federal's discovery in the Arbitration and the preparation of its case, Federal also filed the motion for expedited production at issue.

D.     **The Joyce Firm's "Response"**

The Joyce Firm made four objections to the subpoena, none of which provide any legal or factual basis upon which to refuse to comply with a validly served subpoena. Federal replies to the Joyce Firm's contentions below.

    1.     **Federal and the Joyce Firm Sought to Stay the Arbitration**

The Joyce Firm objected because the subpoena was issued in an arbitration which Federal sought to have stayed. While it is true that Federal and the Joyce Firm contend that simultaneous litigation over the same policy proceeds in two different forums is improper, Federal was unable to obtain a stay from the arbitration panel and the California court despite the fact that the motion presented in California was joined by the Joyce Firm on behalf of the *Lee* plaintiffs pursuant to Count III of their complaint which sought that very relief. This, however, does not present any basis for total noncompliance with a subpoena.

    2.     **The Joyce Firm's Assertion of "Overbreadth" Ignores *All* of the Issues in Federal's Coverage Arbitration**

The Joyce Firm's next objection, that the requests are not tailored to the issues in the coverage arbitration, addresses only one of the issues in the arbitration, the "insured versus insured" exclusion. This objection completely misses the mark with respect to Federal's contention that the fees and costs EPS incurred and for which BRG seeks payment are not

"Defense Costs" as defined by the policy as *"resulting solely from the investigation, adjustment, defense,* and appeal of a Claim against the Insured." The Joyce Firm's own response memorandum admits the relevance of the documents sought to that issue.

Moreover, the Joyce Firm's objection is in reality based upon its disagreement that EPS assisted in its prosecution of the claims such that the "insured versus insured" exclusion applies. Despite the assertions that EPS did not assist in the prosecution of the Joyce Firm's clients' claims, the documents EPS has already produced contain evidence to the contrary. In this regard, there are numerous memos that were circulated between EPS' counsel, the Joyce Firm and Holdens' counsel, Much Shelist. A copy of a sampling of these memos is attached as Exhibit 1. These memos included "BRG InterOffice memos" that included distribution to the Joyce Firm (see FED012590-92)[2], memos from the Joyce Firm to BRG commenting upon draft pleadings and motions so that a position contrary to that of the Joyce Firm clients was not asserted (see FED008280-83), a memo from the Joyce Firm to EPS' counsel and TTR's counsel coordinating further depositions of "valuable witness[es] to us" (see FED002832-36), and a memo from the Joyce Firm to EPS' counsel and Holdens' counsel enclosing "a list of questions for which Massey will give a yes answer" to be used unless "any of these questions pose a problem for us" (see FED014469-87). At least one "Team Meeting" of EPS' counsel included a telephone conference with Joyce Firm lawyers and counsel for the Holdens for the further coordination of the prosecution of their claims. A copy of the memo memorializing this meeting is attached as Exhibit 2.

---

[2]    EPS bates marked the documents it produced in the Arbitration "FED." Although requested, EPS has never provided an explanation for this designation.

### 3.    **The Joyce Firm's Assertion of "Delay" Is Nonsense**

The Joyce Firm suggests that Federal somehow delayed issuance of the subpoena and, therefore, it should not have to comply with the subpoena. The Joyce Firm clearly does not have standing to assert that objection nor does it even makes sense based upon facts completely ignored by the Joyce Firm that: (1) EPS demanded that Federal refrain from serving this subpoena earlier in the arbitration asserting the potential for prejudice until the underlying Lee arbitration was resolved; (2) Federal served the subpoena well within the written discovery cut-off date in the Arbitration; and, (3) in any event, some of the documents that are the subject of the subpoena were generated and/or received during the period of time *after* which the Joyce Firm contends Federal should have issued its subpoena.[3]

### 4.    **The "Common Enemies" Shared by EPS and the Joyce Firm Clients Were EPS' Directors and Officers and Federal's Insureds**

The Joyce Firm also contends, based upon its own self-serving conclusion, that it need not comply with the subpoena because the collaborative work efforts of EPS' counsel and the Joyce Firm somehow benefited Federal because they relate to prosecution of claims against D&T and Jefferies who were "common enemies" of the Shoecraft and Lee claimants and EPS. This conclusion admits the relevance of the requested documents to the issue that most of the attorneys' fees incurred by EPS' counsel were not within the policy's definition of "Defense Costs" but were, in reality, for the prosecution of the Affirmative Case.

---

[3]     Another common objection is the Joyce Firm's conclusion that documents generated or received during the Shoecraft actions are somehow not relevant because EPS was not a party to those cases. EPS was a defendant in certain of those cases and entered into a tolling agreement. Accordingly, there was always the potential that the claimants in the Shoecraft actions would pursue their claims against EPS and that coverage would be sought from EPS's D&O insurers. Indeed, many of the claimants in the Shoecraft actions are now plaintiffs in the Lee case who have a $16 million judgment against EPS. Thus, this objection does not make any sense.

Moreover, Federal's insureds, Massey, Watts and Weinhuff, were at one time principals of D&T and Jefferies. The roll-up participants, now the Joyce Firm clients, were required to sign a Closing Cross-Receipt "acknowledging receipt, review, understanding and acceptance of this memorandum" which contained the following:[4]

   1.    **Deloitte & Touche Acknowledgement**

REDACTED

REDACTED

A copy of this document is attached as Exhibit 3 (emphasis added.)

Thus, while it is the Joyce Firm's contention that its clients and EPS shared common enemies, it is Federal's contention that these common enemies were EPS' directors and officers who were insureds under Federal's policy. As such, it is Federal's position that this conduct invokes the "insured versus insured" exclusion. Even if Federal is ultimately wrong, the documents which the Joyce Firm has admitted relate to its efforts toward these common enemies are relevant under the legal standards for discovery and that is all that is required for production.

   D.    <u>**The Status of the Coverage Arbitration**</u>

Time is of the essence for Federal to obtain the Joyce Firm's documents as there is a significant amount of discovery to be conducted relative to which the Joyce Firm's documents

---

[4]    ProfitSource is the entity which later became EPS.

are critical to Federal's ability to conduct discovery and prepare its case for arbitration. The panel recently continued the fact and expert discovery closure date to March 21, 2008 and the hearing dates to late May 2008. Compliance with these dates necessitates Federal's request for an expedited ruling requiring the Joyce Firm to produce documents responsive to Federal's subpoena as soon as possible.

## II.   ARGUMENT

### A.   Legal Standards

Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party. Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. District courts have broad discretion in matters relating to discovery. *See* Brown-Bey v. United States, 720 F.2d 467, 470-471 (7th Cir.1983). "[I]f there is an objection the discovery goes beyond material relevant to the parties' claims or defenses, the Court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible."  Federal Rule of Civil Procedure 26(b)(1) Advisory Committee Notes, 2000 Amendment. The federal discovery rules are to be construed broadly and liberally. Herbert v. Lando, 441 U.S. 153, 177 (1979).

The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant. Wauchop v. Domino's Pizza, Inc., 139 F.R.D. 539 (N.D.Ind.1991). The objecting party must "specifically detail the reasons why each [request] is irrelevant...." Schaap v. Executive Indus., Inc., 130 F.R.D. 384 (N.D. Ill. 1990).

8

In addition, parties asserting an objection to discovery on the ground of privilege must present that objection in a timely and proper manner as defined by the Rules. *See* Ritacca v. Abbott Laboratories, 203 F.R.D. 332, 335 (N.D. Ill. 2001). Pursuant to Rule 26(b)(5), the objecting party is required to expressly make the claim of privilege and "describe the nature of the documents, communications, or things not produced ... in a manner that, without revealing information itself privileged ... will enable [the] other part[y] to assess the applicability of the privilege." Id. Blanket objections do not suffice. Id. at n. 4.

### B.  The Joyce Firm's Objections Are Not Meritorious

The Joyce Firm has asserted in Response to Federal's Motion for Expedited Production that it has no documents responsive to requests numbered 2, 4-6, 10, 12, 15 and 16. Federal replies to the Joyce Firm's comments regarding the other requests below.

Request Number 1 seeks "[a]ll documents which relate to, reference or evidence expenses incurred in any of the Underlying Matters." The Underlying Matters are defined in the Rider to include the Holden action, the TTR action, the Horowitz action, the Shoecraft action, the Gould action and the Lee action. The Joyce Firm asserts that this is a "fishing expedition" because it seeks information relative to a period of time "in a case that Federal's insured, EPS, was not even a party." This objection is meritless based upon the Joyce Firm's own assertion that there was collaboration among the Joyce Firm, EPS and Holdens' counsel against their "common enemies." More specifically, certain of the plaintiffs in the Shoecraft action who are plaintiffs in the Lee action now have a $16 million judgment against EPS. If EPS instigated and assisted their actions, the insured versus insured exclusion applies. On this issue, Federal is clearly entitled to discovery.

Request Number 3 seeks "[a]ll documents which relate to or reflect any agreement with any person acting on behalf of EPS regarding the sharing of expenses incurred in the Underlying Matters or the Affirmative Case." While the Joyce Firm unilaterally decided that expenses that might have been shared benefited EPS' D&O insurers, that is not so. There is evidence that EPS paid for lavish meals and hotels for the Joyce Firm attorneys and that there is no evidence of reimbursement. Clearly these expenses did not "benefit" EPS' D&O insurers. Moreover, they are not "Defense Costs" within the policy's definition for which Federal is entitled to the discovery of these documents and which documents also relate to the applicability of the "insured versus insured" exclusion. Given the broad standard for relevance in the Federal Rules of Civil Procedure, clearly documents relating to agreements between Federal's insured to share expenses with the claimants that are suing it are also relevant to the cooperation clause and the insured versus insured exclusion.

Request Number 7 seeks "[a]ll documents sent to or received from EPS' counsel in any of the Underlying Matters relating to the investigation of the claims asserted in the Affirmative Case and the Underlying Matters." Request Number 8 seeks "[a]ll documents that refer or relate to the preparation of the Complaint or any other pleadings in the Affirmative Case" and Request Number 9 seeks "[a]ll documents sent to or received from anyone acting on behalf of EPS that refer or relate to the preparation of the Complaint or any other pleadings in any of the Underlying Matters." The Joyce Firm's objection to these requests is based solely upon its conclusion that these documents are not relevant "because EPS' counsel provided no assistance to any claim against EPS." Federal is not bound by counsel's blanket denial and is entitled to discovery on the issue. Moreover, this assertion bears no relationship to the information in the documents produced by EPS itself. For instance, EPS' outside general counsel, Ed Ruberry, who

10

also represented EPS in the Affirmative Case and Underlying Matters actually referred at least certain of the <u>Lee</u> claimants to the Joyce Firm and, thereafter, met with the Joyce Firm attorneys. A copy of this document is attached as Exhibit 4. Moreover, as demonstrated above, the "common enemies" are EPS' former directors and officers who are Federal's insureds. Accordingly, these documents are quite relevant.

Request Number 11 seeks "[a]ll documents sent to or received from EPS and/or Navigant Consulting Services or any of its agents or employees relating to the Underlying Matters or the Affirmative Case." Attached as Exhibit 5 is an excerpt from the deposition of Dr. Strombom, the expert witness on behalf of the <u>Lee</u> claimants. Dr. Strombom admitted that **REDACTED** **REDACTED**. Based upon this testimony, Federal is clearly entitled to the documents described in Request Number 11.

Request Number 13 seeks "[a]ll documents which refer or relate to communications between EPS' attorneys and any lawyers for any party in the Underlying Matters and/or the Affirmative Case" and Request Number 14 seeks "[a]ll letters, notes, emails or memoranda sent to or received from anyone acting on behalf of EPS which refer or relate to the fraud alleged in the Affirmative Case." The Joyce Firm's self-serving conclusion that "EPS's counsel provided no assistance to any claim against EPS" does not serve as a legal basis to refuse to comply with a validly served subpoena. Moreover, it does not remotely address the standard of relevance in connection with a discovery subpoena.

The Joyce Firm acknowledges it has documents potentially responsive to Requests Numbered 17-19 and 20-22 but refuses to produce them based upon its erroneous relevance objection which itself is predicated upon the self-serving conclusion that EPS' counsel did not assist in any claims against EPS. This assertion has been addressed in detail above.

Request Number 23 seeks "[a] copy of all indices, abstracts, summaries or any other memoranda relating to any deposition taken in the Underlying Matters or Affirmative Case that you sent to or received from EPS." The Joyce Firm somehow concludes that this request is overly broad but never explains why. Clearly, if EPS' counsel is sharing work product with the attorneys that represent the parties that sued EPS that is relevant to the issues in the arbitration. Indeed, as certain of the plaintiffs in the <u>Shoecraft</u> action who are plaintiffs in the <u>Lee</u> action now have a $16 million judgment against EPS, the insured versus insured exclusion would apply.

### C. <u>No Privileges Have Been Shown and Do Not Exist Under the Circumstances of this Case</u>

The Joyce Firm made a blanket statement that "Federal did not exclude from its requests the Joyce Firm's privileged work product regarding the claims brought against Jefferies and Deloitte" but never provided any factual information with which to support that complaint. To the extent that there is anything which could be privileged, Federal contends that the Joyce Firm has waived any potential privilege for various reasons.

First, without any explanation of what its privileged work product is it is impossible to address the claimed privilege. Accordingly, Federal contends that any privilege is waived. <u>See</u>, <u>Anderson v. Hale</u>, 202 F.R.D. 548 (N.D. Ill. 2001)("Rule 26(b)(5) requires the objecting party to expressly make the claim of privilege and 'describe the nature of the documents, communications, or things not produced ... in a manner that, without revealing information itself privileged or protected, will enable [the] other part[y] to assess the applicability of the privilege or protection.'") <u>See also</u>, <u>Jones v. Ada S. McKinley Community Services</u>, 1989 WL 152352 (Nov. 28, 1989) (failure to raise privilege results in waiver).

12

Additionally, the Joyce Firm represented claimant Tim O'Brien in the <u>Shoecraft</u> actions during which time Mr. O'Brien was a consultant to EPS. In essence, Mr. O'Brien was a conduit for information between EPS and the Joyce Firm (and others) the Underlying Matters. At Mr. O'Brien's deposition, EPS' counsel, Edward Ruberry objected to questions regarding O'Brien's knowledge and stated:

**REDACTED**

A copy of the relevant O'Brien deposition pages are attached as Exhibit 6. Thus, at the same time O'Brien assisted his counsel, the Joyce Firm, in prosecuting claims on behalf of hundreds of claimants which were later asserted against EPS, he also assisted EPS in prosecuting its claims. It is virtually impossible for any privilege to exist especially where, as here, these parties prosecuted "common enemies."

The non-existence of any privilege is further supported by the arguments the Joyce Firm itself has asserted. In this regard, Federal needs to know whether any information imparted upon the Joyce Firm by EPS' lawyers or agents were used in the <u>Lee</u> arbitration. While Federal contends that there could not be any privilege under the circumstances of this case, to the extent that it does exist, it has been waived.

13

### III. <u>Conclusion</u>

WHEREFORE, Federal respectfully requests that the Court enter an expedited Order granting Federal's Petition to Enforce Arbitration Subpoena and award such other and further relief as is just and proper.

Date:  February 26, 2008

*[signature]*

One of the attorneys for Federal Insurance Company

Janet R. Davis
Anne L. Blume
Meckler Bulger & Tilson LLP
123 North Wacker Drive
Suite 1800
Chicago, Illinois  60606
Tel:    312/474-7900
Fax:    312/474-7898
O:\6760\Federal v. ETJoyce\reply re expedited production.doc